## IN RE MOND'S APPEAL.

### PATENTS; PATENTABILITY.

1. The process for the manufacture of zinc which consists in lixiviating roasted zinc ores by a solution of caustic soda or potash, electrolyzing the solution of zinc oxide thus obtained with an anode of sodium or potassium amalgam, and causing deposit of zinc on a metallic cathode, *held* to be not patentably new.

2. Where the Commissioner of Patents refused to an applicant a claim for the process of reducing a metallic oxide by electrolysis and the applicant acquiesced in that rejection, but prosecuted another claim which differed from the rejected claim, first, in mentioning zinc specifically as the metal to be extracted from the metallic oxide and, second, in the introduction into the claim of the preliminary step of producing the zincate solution by lixiviation of roasted zinc ores by caustic-alkali solutions, it was *held* that the first modification did not add to the patentability of the alleged invention, and that the second modification simply added to the process which was rejected as unpatentable a preliminary step which was already well known, and that the claim was not patentable.

3. If a process for the reduction of any and all metallic oxides is not

patentable, the same process for one specific metal oxide—the oxide of zinc—can not be patentable.

4. The addition of one well known process to another well known process does not constitute invention unless some different or better result is produced than that which had been previously obtained.

No. 142.   Submitted March 13, 1900.   Decided April 3, 1900.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for a patent. *Affirmed.*

*Mr. Jas. L. Norris* and *Mr. Geo. W. Rea* for the appellant.

*Mr. W. A. Megrath* for the Commissioner of Patents.

Mr. Justice MORRIS delivered the opinion of the Court:

The appellant, Ludwig Mond, claiming to be the inventor of a process for the manufacture of zinc—that is, for the extraction of zinc from the zinc ore—applied for letters patent therefor; and being denied by the Commissioner of Patents, who affirmed the decision of the primary examiner and of the board of examiners in chief to the same effect, he has appealed to this court. The claim of invention is thus stated by the applicant in an amendment of his specification, and by the primary examiner in his statement:

"The herein described improvement in the manufacture of zinc which consists in lixiviating roasted zinc ores by a solution of caustic soda or potash, electrolyzing the solution of zinc oxide thus obtained with an anode of sodium or potassium amalgam, and causing deposit of zinc on a metallic cathode, as specified."

About two years previously to the application in the present case, the appellant had filed in the Patent Office an application substantially identical to some extent with the present, and in which he had stated his claim in these terms:

" The herein-described process for reducing a metallic oxide which is soluble in a caustic alkali by introducing

into its solution in the caustic alkali an amalgam of the same alkaline metal as that in the caustic alkali with mercury and a piece of suitable metal as cathode electrically connected to the amalgam, whereby the alkaline metal of the amalgam is oxidized producing caustic alkali and the dissolved oxide is reduced, its metallic base being deposited on the cathode."

This first presented claim, it appears, had been rejected in the Patent Office by the primary examiner, as having been anticipated by an English patent of Squire and Currie for the same or a similar process; and the decision of the examiner was affirmed by the board of examiners in chief and by the Commissioner of Patents on appeal. The applicant seems to have acquiesced in the final decision of the Commissioner; for he took no further steps in the case. The present claim differs from its predecessor only in two particulars: First, in the mention of zinc specifically as the metal to be extracted from the metallic oxide ; and, second, in the introduction into the claim of the preliminary step of producing the zincate solution by lixiviation of roasted zinc ores by caustic alkali solutions.

We fully concur with the primary examiner and the tribunals of the Patent Office, that the first modification, that is, the limitation of the claim to the production of zinc merely, does not add to the patentability of the alleged invention. If a process for the reduction of any and all metallic oxides is not patentable, it is difficult to say how the same process for one specific metal oxide, the oxide of zinc, can be patentable. The whole necessarily includes the part. The genus includes the species. No great insistence seems to be made on this point before us, and we must hold that it is not tenable.

The principal, if not the exclusive, contention of the appellant is, that by the second modification and by the combination of all the elements therein aggregated he has discovered a novel and useful process. But this contention

16 Ct. App.—24

seems to us to be likewise untenable in view of the state of the art when the application was made. The second modification, as already stated, simply adds to the process which was rejected as unpatentable a preliminary step of lixiviating roasted zinc ores by a solution of caustic soda or potash. But this preliminary step was already well known. It is described in almost identical language in the patent of Squire and Currie in England, wherein the first part of the claim is that of "obtaining metallic zinc by treating its ores, previously converted into oxide by roasting if necessary, with a solution of caustic potash or soda."

Now, the addition of one well known process to another well known process does not constitute invention unless some different or better result is produced than that which had been previously obtained; and it is not apparent here that there has been any such result. The production of a solution of zinc by treating roasted zinc ore with a solution of caustic soda or potash and the subjection of the solution so obtained to an electrolyzing process, is precisely what Squire and Currie did under their patent. It is impossible, therefore, that it should now be a novelty patentable to this appellant, unless there is something novel in the electrolyzing process; but the same electrolyzing process appears also in the patent to Squire and Currie, and seems likewise to have been anticipated in an English patent to Charles Kellner, which appears in the record. This same electrolyzing process it is for which the applicant had made his previous application, which was rejected by the Patent Office as unpatentable in view of the previous state of the art, and which must now be regarded as an abandoned claim. That rejection has been treated in this case as an adjudication of the applicant's claim, and it is an adjudication which it does not seem to be proper for us to review in this proceeding, even if the record contained the necessary material for such review, which may be doubted.

It seems to be conceded by the appellant that there is no

novelty in any of the elements of his claim, and his argument seems to resolve itself into the contention that his combination makes a substantially new and patentable process. Much stress is laid on the point that, in the course of his process, he manufactures chlorin gas and a flowing sodium amalgam anode, besides effecting the separation and deposit of the zinc in a pure coherent form on the cathode of the cell, and manufacturing, during this process of separation, the caustic alkali solution necessary for the manufacture of the zinc. And all this is claimed in the appellant's brief as a continuous process. This claim does not seem to be entirely without merit; and it may be that the applicant's process is superior to that of his predecessors in the art. But we find ourselves restricted here to the claim of the specification, wherein there is no mention whatever of chlorin gas, or the manufacture of sodium amalgam, or the manufacture of caustic alkali solution, or any continuous process starting with common salt and roasted zinc, with an infusion of water, as the primary materials. The claim of the specification is simply for a process for the manufacture of zinc by electrolyzation, and for nothing else. If it was the intention to claim anything beyond that, it has not been done. Whether, if the claim of the specification was as broad and comprehensive as the claim of the brief, there would have been invention, it is unnecessary to determine. What we have to determine is the patentability of the claim of the specification; and we find no reason to come to a different conclusion on that question from that reached by the Commissioner of Patents and by all the tribunals of the Patent Office. We accordingly *affirm the decision of the Commissioner of Patents.*

*The clerk of the court will certify this opinion and the proceedings of this court in the premises to the Commissioner of Patents, according to law.*